```
                     UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY


JAY BELL, III,                       :
                                     :    HONORABLE JOSEPH E. IRENAS
     Plaintiff,                      :
                                     :    CIVIL ACTION NO. 08-cv-2410
     v.                              :
                                     :              OPINION
KA INDUSTRIAL SERVICES, LLC,         :
                                     :
     Defendant.                      :
```

**APPEARANCES:**

MARTIN, GUNN & MARTIN, P.A.
By:  William J. Martin, Esq.
216 Haddon Avenue, Suite 420
Westmont, NJ 08108
     Counsel for Plaintiff

RIKER DANZIG SCHERER HYLAND & PERRRETTI, LLP
By:  Ronald Z. Ahrens
One Speedwell Avenue
Morristown, NJ 07962
     and
SMITH & DOWNEY, P.A.
By: Douglas W. Desmarais
     Patrick D. Sheridan
One W. Pennsylvania Avenue, Suite 950
Baltimore, Maryland 21204
     Counsel for Defendant


**IRENAS**, Senior District Judge:

   This matter appears before the Court on Defendant's Motion to Dismiss the Amended Complaint for Failure to State a Claim Upon Which Relief can be Granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons sets forth below, the Court will grant in part and deny in part the Motion.

I.

The following facts are alleged in the Amended Complaint. Defendant, KA Industrial Services, LLC, ("KA") employed Plaintiff, Jay Bell, III, ("Bell") as a backhoe operator/laborer beginning in September 2006.[1] (Amend. Compl. ¶ 3.)  On March 3, 2007, Bell was involved in an ATV accident in which he suffered injuries including a shattered femur and a broken collar bone.[2]  (*Id.* at ¶ 4).  On that same date, Bell took disability leave from his employment with KA.  (*Id.* at ¶ 5.)

Bell was "cleared" to return to work on September 3, 2007, and alleges that he advised KA that he would return to work on that day.  (Amend. Compl. at ¶ 7.)  However, when he arrived at the job site at 6:00 a.m. on September 3, he could not gain access to the premises because his badge would not work.  (*Id.* at ¶ 8.) Bell went to the badging office at the Eagle Point refinery, and a

---

[1] Bell is a resident of New Jersey.  (Amend. Compl. ¶ 1.) KA is a limited liability company incorporated in Delaware with its principal place of business in Indiana.  (Notice of Removal ¶ 5.)  A corporation is a citizen of its state of incorporation and its principal place of business.  28 U.S.C. § 1332(c).  Therefore, this Court has subject matter jurisdiction under 28 U.S.C. § 1332, and removal was proper under 28 U.S.C. § 1441(a), if the amount in controversy is greater than $75,000.  However, because Bell's claim for damages is open-ended, there may be some question as to whether the amount in controversy is greater than $75,000. Plaintiffs have not filed a motion to remand, and as the question of amount in controversy is not squarely before the Court, it will not be addressed at this time.

[2] The Amended Complaint asserts that Bell was 19 years old when the alleged events took place.  (Amend. Compl. ¶¶ 1, 3.) Bell does not state whether the accident was or was not work-related.

call came into the office.  (*Id*.)  The secretary handed the phone to Bell, who was told by the site supervisor, Tom Kennedy: "Go home.  I no longer have a position for you.  You were replaced.  Sorry, Jay."  (*Id*.)  Later, Bell received a call from his superintendent who informed Bell that he was being terminated because he did not follow orders.  (*Id.* at ¶ 9.)  Nothing in the materials presently before the Court indicates whether or not Bell has found new employment.[3]

Bell filed his original complaint on March 24, 2008.  KA then filed this Motion to Dismiss under Rule 12(b)(6) on May 22, 2008.  Thereafter, Bell filed his Amended Complaint on June 2, 2008.

Count I of the Amended Complaint alleges that KA discriminated against Bell within the meaning of the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 et. seq. (Amend. Compl. ¶ 10.)  Because of this alleged discrimination, Bell claims he has and will continue to suffer "injury and damage to his reputation, emotional distress, humiliation, the loss of past, present and future earnings and benefits."  (*Id*. at ¶ 11.)

Count II of Bell's Amended Complaint alleges common law claims of breach of "contract."[4]  (Amend. Compl. ¶ 17.)

---

[3] The Amended Complaint also gives no indication whether Bell was a salaried or hourly worker, or how much he was paid by KA prior to his termination.

[4] The Amended Complaint does not explicitly allege the existence of a written employment contract, of any kind, whether in the form of an employee handbook or otherwise.  Bell's brief

Specifically, the Amended Complaint alleges,

> Defendants had an employment contract with the plaintiff and their conduct of terminating him for seeking to return from [sic] work after suffering a serious physical injury breach [sic] the implied covenant of good faith and fair dealing in the employment contract and violated a clear mandate of public policy thereby breaching the employment contract, and/or constitutes a breach of an implied contract with the plaintiff by terminating plaintiff in violation of defendant's own policy.

(Id.)

Lastly, in Count III Bell alleges that John Does 1-40 were involved in the alleged discrimination and breach of contract or implied contract. (Amend. Compl. ¶¶ 21-25.) However, as no individuals or organizations have been named, the Court will not address Count III at this time.[5]

For the reasons explained herein, the Court will deny

---

asserts (without any supporting authority) that "Plaintiff has alleged that he was employed by the defendant in September 2006, which under New Jersey law is a contract." (Opp. Br. p. 12) Based on the allegations of the Amended Complaint Bell must be considered an at-will employee. *See Witkowski v. Thomas J. Lipton,* 136 N.J. 385, 397 (1994)("In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine. *An employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that provides  otherwise.*")(internal citations omitted; emphasis added).  Indeed, in his opposition to the present Motion, Bell asserts, "despite his at-will status, plaintiff may maintain a breach of contract claim." (Opp. Br., p. 14.)

[5]   KA moves to dismiss "any claim" asserted under New Jersey's Family Leave Act, arguing that the Amended Complaint "suggests" such a claim. (Reply p. 3)  However, it is clear from the face of the Amended Complaint that no such claim is actually asserted.

4

Defendant's Motion to Dismiss as to Count I, and will grant the Motion as to Count II.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007); *see also* Fed. R. Civ. P. 8(a)(2). While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234.

### A.

The New Jersey Law Against Discrimination (LAD), N.J.S.A. 10-5:1 et. seq., prohibits employers from terminating employees

because of a disability "unless the nature and extent of the disability reasonably precludes the performance of the particular employment."  N.J.S.A. 10:5-4.1.  Because public policy provides the basis for the creation of the LAD, its protection against discrimination based on disability extends to "at-will" employees. *Greenwood v. State Police Training Ctr.*, 127 N.J. 500, 512 (1992).

New Jersey has adopted the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),[6] as the starting point in actions brought under the LAD.  *Andersen v. Exxon Co., U.S.A.*, 89 N.J. 483, 492 (1982).  Though the *McDonnell Douglas* analysis is followed in cases of discriminatory discharge, the elements of the prima facie case are modified slightly to fit the circumstances. *Clowes v. Terminix Int'l., Inc.*, 109 N.J. 575, 596 (1988).  In order for a plaintiff to establish a prima facie case of discriminatory discharge because of a handicap, he must establish

---

[6] Under *McDonnell Douglas*, a plaintiff claiming unlawful discrimination must establish, by a preponderance of the evidence, a four-part prima facie case: (1) he belongs to a protected class; (2) he applied and was qualified for the position for which the employer was seeking applicants; (3) he was rejected despite adequate qualifications; and (4) after rejection the position remained open and the employer continued to seek applications for persons of plaintiff's qualifications.   *Andersen v. Exxon Co., U.S.A.,* 89 N.J. 483, 492 (1982)*.*  Once a plaintiff has established the prima facie case, the burden of proof shifts to the employer who may rebut the presumption of discrimination by providing a legitimate, non-discriminatory reason for the rejection.  *Id* at 491*.*  Then, the plaintiff may "prove by a preponderance of the evidence that the legitimate nondiscriminatory reason articulated by the defendant was not the true reason for the employment decision but was merely a pretext for discrimination." *Id.*

that: (1) he is disabled or perceived to have a disability; (2) he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer; (3) he was fired; and (4) the employer sought someone else to perform the same work. *Muller v. Exxon Research & Eng'g. Co.*, 345 N.J. Super. 595, 602 (App. Div. 2001); *Rogers v. Campbell Foundry, Co.*, 185 N.J. Super. 109, 112 (App. Div. 1982).

However, as Bell correctly observes, a plaintiff in an employment discrimination case does not have to plead facts in his complaint establishing a prima facie case. The Supreme Court held that "an employment discrimination plaintiff does not need to plead a prima facie case of discrimination . . . ," in part because the *McDonnell Douglas* standard is an evidentiary standard, not a pleading standard. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 515 (2002). Therefore, a plaintiff claiming employment discrimination need only plead facts sufficient to meet the standard of Federal Rule of Civil Procedure 8(a). *Thomas v. Independence Twp.*, 463 F.3d 285, 295 (3d Cir. 2006)("The marching orders of the Supreme Court in . . . *Swierkiewicz* are clear: the notice pleading standard of Rule 8(a) applies in all civil actions, unless otherwise specified in the Federal Rules or statutory law.").

After *Swierkiewicz*, was decided, the Supreme Court's holding

7

in *Twombly* altered the notice pleading standard.[7]  However, the Court itself stated that its holding did not run counter to *Swierkiewicz.*  127 S. Ct. at 1973.  *Swierkiewicz*, the Court wrote, held that employment discrimination plaintiffs did not need to meet a heightened pleading standard.  *Id.*  *Twombly* did not require heightened fact pleading, i.e., it did not require plaintiffs to establish a prima facie case beyond the Rule 8(a) standard.  It simply altered the Court's interpretation of Rule 8(a).  *Id.* at 1973-74.  Thus, in this employment discrimination case, Bell does not have to meet the standard for a prima facie case under *McDonnell Douglas*, but does have to meet *Twombly's* requirement that the facts alleged must raise the right to relief above a speculative level.  The elements of the prima facie claim do not have to be proven, but merely must be plausible.

In support of its present Motion, KA asserts that Bell has failed to plead sufficient facts to establish the first and second elements of a prima facie case of disability discrimination under

---

[7] The Court rejected the oft-cited language of *Conley v. Gibson*, which stated: "a complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957); *Twombly,* 127 S. Ct. at 1969.  That language, the Court stated, was in danger of being read to mean that "any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings."  *Id.* at 1268.  Instead, the Court insisted factual allegations in a pleading must establish "plausible grounds" and "raise the right to relief above the speculative level."  *Id.* at 1965; *see also supra*, Part II.

8

LAD.  Both arguments fail.

As to the first element, Bell has alleged sufficient facts to plausibly support the conclusion that he is within the class protected by LAD.  Under LAD, "'[d]isability' means physical disability, infirmity, malformation, or disfigurement which is caused by bodily injury . . . ."  N.J.S.A. 10:5-5(q).  Bell's injuries allegedly included a shattered femur and broken collar bone (Amend. Compl. ¶ 4) which are bodily injuries that cause physical disability.  The Amended Complaint is not clear whether Bell was still suffering from his disability when he reported to work on September 3, 2007; however, even if he was no longer suffering any effects from his injuries, he has alleged sufficient facts to plausibly support a claim based on a perception of disability.  Bell alleges that he reported to work after his disability leave and was immediately terminated.  Thus, KA allegedly knew of Bell's disability and his termination was allegedly close in time to when he became disabled or KA perceived him to be disabled.  These alleged facts, if proven true, could plausibly support the conclusion that KA terminated Bell because it perceived him to be disabled.

Bell has also sufficiently alleged facts to support the second element of the prima facie claim, that he was qualified to perform the essential functions of the job.  Specifically, the Amended Complaint asserts that "Plaintiff was cleared to return to

9

work on September 3, 2007 and advised defendants that he would return that day." (Amend. Compl. ¶ 7.)  The Amended Complaint further alleges that Bell reported to the job site ready to work. (Id. at ¶ 8.)  Moreover, read in its entirety, the Amended Complaint alleges that Bell, a 19 year-old man at the time, suffered broken bones, and approximately six months later, reported back to work.  It is certainly plausible that Bell had sufficiently healed to the point where he was able to perform his duties as a backhoe operator.

KA does not dispute that the third element of the prima facie case for employment discrimination-- termination-- has been alleged.  Bell's allegations also sufficiently support the fourth element of his LAD claim, that the employer sought someone else to perform the same work.  KA allegedly "replaced" Bell.  (Amend. Compl. ¶ 8.)[8]

The Third Circuit has declined to hold that a temporary leave

---

[8] KA emphasizes that Bell has failed to assert that he was replaced with a *similarly qualified* person.  At this early stage of the case, the Court will not dismiss the LAD claim on that ground, given the alleged nature of Bell's termination.  According to the Amended Complaint, Bell was not even allowed access to the work site when he was told, "'Go home. . . You were replaced.'" (Amend. Compl. at ¶ 8.)  Without the benefit of discovery, Bell is in no position to know whether or not his replacement was similarly qualified.  Moreover, to the extent that the Amended Complaint may assert a violation of LAD for failure to accommodate, Bell need not establish that his replacement was similarly qualified. *See Leshner v. McCollister's Transp. Sys.*, 113 F. Supp. 2d 689, 691 (D.N.J. 2000)(Irenas, J.) (Allegedly disabled plaintiff need only plead that he was replaced in a disparate treatment case; not a failure to accommodate case).

of absence must be granted under the LAD to accommodate a disability. *Conoshenti v. Pub. Serv. Elec. & Gas Co.,* 364 F.3d 135, 151 (3d Cir. 2004). The Court is not suggesting that a leave of absence is guaranteed to an at-will employee absent from work for six months because of injury. KA may have simply chosen to replace Bell because of his failure to report to work for six months, but the Amended Complaint suggests that this case may not be so simple. Bell alleges that the reason his superintendent provided for his termination was his failure to follow orders, which could support the reasonable inference that he was not fired for his absence from work. (Amend. Compl. ¶ 9.)[9] Therefore, if the facts pled are taken to be true, it is plausible that Bell was not terminated for his failure to report to work for six months, but rather for a perceived disability.

Because Bell has plead sufficient facts establishing a plausible claim of disability discrimination in violation of LAD, the Court will deny KA's Motion to Dismiss Count I of the Amended Complaint.

**B.**

Count II of Bell's Amended Complaint alleges breach of an

---

[9] Bell also asserts in his brief that KA "participated in providing the necessary disability paper work for the plaintiff to receive temporary disability." (Pl.'s Br. at 3.)

11

employment "contract" between himself and KA.[10] The Court interprets Count II to assert three claims: (1) breach of contract in violation of public policy, see *Pierce v. Ortho Pharm.*, 84 N.J. 58 (1980)(hereafter "the *Pierce* claim"); (2) breach of implied contract by termination in violation of KA's own policy, see *Woolley v. Hoffman-LaRoche, Inc.*, 99 N.J. 284 (1985)(hereafter "the *Woolley* claim"); and (3) breach of an implied contract based on oral communications to Bell, see *Shebar v. Sanyo Bus. Corp.*, 111 N.J. 276 (1988) (hereafter "the *Shebar* claim"). Each claim will be addressed in turn.

(1)

Under New Jersey law, "an at-will employee may not be terminated if the termination is contrary to a clear mandate of public policy." *Malone v. Aramark Servs., Inc.*, 334 N.J. Super. 669, 674 (Law Div. 2000)(citing *Pierce*). The only mandate of public policy that Bell identifies is the anti-discrimination policies underlying LAD. However, an employee may not bring a *Pierce* claim if the statutory source of public policy he relies on is "coterminous with his statutory claims." *Lawrence v. National Westminster Bank*, 98 F.3d 61, 73 (3d Cir. 1996).[11] Accordingly,

---

[10] See *supra* note 4.

[11] Citing *Catalane v. Gilian Instrument Corp.*, 271 N.J. Super. 476 (App. Div. 1994) (ruling common law claim of violation

12

Bell's *Pierce* claim, premised on the public policy embodied by LAD, must fail as a matter of law.

Additionally, Bell's potential *Pierce* claim based on the policies underlying New Jersey's Family Leave Act ("FLA"), N.J.S.A. 34:11B-1-B-16, or the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, also fails.[12]  *Hampton v. Armand Corp.*, held that a plaintiff-employee could not maintain a *Pierce* claim based on either the FLA or FMLA in a case factually similar to this case.  364 N.J. Super. 194 (App. Div. 2003).[13]

In *Hampton*, the plaintiff was the person injured and she had been employed by the defendant for less than 12 months when she took leave.  364 N.J. Super. at 197-98.  The Court held that "the policy expressed by the FMLA- that an employee is entitled to

---

of public policy should not be submitted to jury where statutory remedy under LAD exists), *certif. denied*, 136 N.J. 298 (1994); *Shaner v. Horizon Bancorp.*, 116 N.J. 433 (1989) ("Because the LAD provides . . . a remedy, it might be unnecessary to recognize or create a *Pierce*-type action to vindicate substantially the same rights and provide similar relief.").

[12]  Bell does not make this argument, however, the facts pled generally suggest an argument that KA violated the public policies underlying the state and federal leave acts.  While Bell's failure to clearly identify the expression of public policy in itself would be sufficient to dismiss this claim, *see Pierce*, 84 N.J. at 73 ("if an employee does not point to a clear expression of public policy the court can grant a motion to dismiss"), the Court will dismiss the claim on the merits instead.

[13]  *See also, Capilli v. Whitesell Constr. Co.*, No. 07-1637, 2008 U.S. App. LEXIS 6962 at *18 (3d Cir. Apr. 1, 2008)(relying on *Hampton*).

reasonable medical leave– applies only to 'eligible employees,' those who have worked for the employer for at least twelve months." *Id.* at 200.  As such, the FMLA did not express a public policy as to employees employed less than 12 months, and therefore could not form the basis of the plaintiff's *Pierce* claim.  *Id.* at 201 ("The FMLA establishes a clear mandate of public policy for 'eligible employees' wrongfully terminated pursuant to its provisions.  That such a public policy exists, however, does not translate to a public policy that protects short-term employees.").

Similarly, with respect to the policy underlying the FLA, the court noted that the FLA only applies to employees who take leave to care for a family member, not employees on leave for their own injuries.  *Hampton*, 364 N.J. Super. at 202.  The court further explained, "[t]he State Legislature has not expressed a public policy that protects an employee, no matter how long employed, from being discharged for taking medical leave for his or her own illness.  Nor is there any judicial precedent to support plaintiff's position."  *Id.*

Here, the allegations of Bell's Amended Complaint establish that he was employed by KA for less than a year when he took disability leave, (Amend. Compl. ¶¶ 3, 5), and that he look leave to recuperate from his own injuries (Id. at ¶ 4-6.)  Accordingly, neither the FMLA or the FLA can serve as the basis of Bell's

*Pierce* claim.

KA's Motion to Dismiss will be granted as to the *Pierce* claim.

(2)

Bell also claims that KA violated its own internal policies when it terminated him, amounting to a breach of contract. When an employer of a "substantial number of employees" circulates a personnel or policy manual containing a termination clause, the manual may be contractually enforceable. *Woolley*, 99 N.J. at 297. However, "[i]n order to state a *Woolley* claim in the first instance, plaintiff must bring to the Court's attention some provision or language in the employment manual that guarantees the employee will not be terminated except for good cause." *Doll v. Port Auth. Trans-Hudson Corp.*, 92 F.Supp.2d 416, 423 (D.N.J. 2000)(*citing King v. Port Auth. of N.Y. & N.J.*, 909 F.Supp. 938, 942 (D.N.J. 1995)), *aff'd*, 261 F.3d 491 (3d Cir. 2001). Because Bell has not alleged the existence of a manual, much less identified a provision or language guaranteeing job security, he has failed to allege facts that raise his claims above the speculative level.[14] Therefore, the *Woolley* claim must be

---

[14] Bell filed his Amended Complaint after receiving KA's Motion to Dismiss. Therefore he had ample opportunity to remedy any inadvertent omission of allegations about the existence of a

dismissed.

(3)

Lastly, Bell alleges that his termination breached the "implied covenant of good faith and fair dealing" in his contract. (Amend. Compl. ¶ 17).  While not at all clear, the Court interprets this allegation as asserting a claim under *Shebar* and its progeny.  A *Shebar* claim may be based on an "alleged oral promise for long-term employment" which creates an implied contract, the terms of which may be evidenced by the parties' oral representations and course of conduct.  *Troy v. Rutgers,* 168 N.J. 354, 367 (2001).[15]  The intent of the parties to the alleged implied contract may be "ascertained from the language employed, from all the surrounding circumstances, and from the presence or absence of the giving of the employee of consideration additional

---

manual or handbook of some kind.  Moreover, unlike Bell's knowledge as to the person who replaced him as it relates to his LAD claim, *see supra* note 9, the existence of an employment manual or handbook is something that would be within Bell's personal knowledge at the time the Amended Complaint was filed.  Indeed, because a *Woolley* claim arises out of employees' reasonable expectations created by the handbook, *Woolley,* 99 N.J. at 298*,* an employee's knowledge of the handbook's existence logically must be an essential element of a *Woolley* claim.

[15]  A *Wooley* claim is based on a "company-wide policy" or "a general agreement covering all employees," while a *Shebar* claim is based on an promise to a specific employee or a course of conduct with respect to a particular employee.  *Troy*, 168 N.J. at 367.

16

to the services incident to his employment." *Id.* (internal citations and quotations omitted).

Bell has not alleged any oral promise by KA or any course of conduct that would support a finding of an implied contract; nor has he alleged any facts that if proven true, would support a conclusion that the implied contract was supported by consideration. Accordingly, Bell has failed to allege facts that raise his *Shebar* claim above the speculative level and KA's Motion will be granted as to this claim.

### III.

Bell has plead facts sufficient to maintain a cause of action against KA as to Count I, but not as to Count II. The Court will deny KA's Motion to Dismiss Bell's Complaint as to Count I and will grant the Motion as to Count II.

The Third Circuit generally requires the district courts to provide plaintiffs whose claims are subject to a Rule 12(b)(6) dismissal with the opportunity to amend their complaints unless amendment would be inequitable or futile. *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). However, KA's Motion to Dismiss, filed before Bell filed his Amended Complaint, highlighted Bell's failure to "delineate the terms of the alleged express employment contract, [] proffer any facts giving rise to

an alleged implied contract, and [] specify the policy allegedly violated." (Def.'s Br. at 6.) Thus, Bell already had an opportunity to remedy asserted deficiencies in his Amended Complaint, but he did not. Under these circumstances, the Court concludes that it would be inequitable to afford Bell a second bite at the amendment apple. Therefore, the Court dismisses Count II of Bell's claim with prejudice. The Court will issue an appropriate order.

Dated: July 25, 2008

                                                       s/ Joseph E. Irenas
                                             **JOSEPH E. IRENAS, S.U.S.D.J.**